UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| **ABIGAIL TORO, on behalf of herself and all others similarly situated,** | **Case No. 3:20-cv-01701 (SRU)** |
| **Plaintiffs,** | |
| **v.** | |
| **UNIVERSITY OF BRIDGEPORT** | |
| **Defendant.** | **JANUARY 11, 2021** |

## DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS RULE 12(B)(6) MOTION TO DISMISS

The Defendant, University of Bridgeport, (hereinafter, "Defendant" and/or "Movant"), hereby moves, pursuant to Federal Rule of Civil Procedure 12(b)(6) for the dismissal of the Plaintiff's Complaint, in its entirety, as set forth herein and in its Motion to Dismiss:

### I.    BACKGROUND

The subject litigation matter was instituted by way a Complaint dated on or about September 22, 2020, which Complaint was served upon the Defendant, University of Bridgeport by and through its general counsel on or about October 14, 2020. Plaintiff returned the Summons and Complaint to the Superior Court of Connecticut, Judicial District of Fairfield at Bridgeport on October 20, 2020. Thereafter, on November 12, 2020, Defendant timely removed this matter from the Superior Court of Connecticut,

2

6984007

Judicial District of Fairfield at Bridgeport, to this Court pursuant to 28 U.S.C. §§ 1332, 1441, and 1446.

Plaintiff's counsel just recently filed a Motion for Admission Pro Hac Vice on December 29, 2020 [Docket Entry No. 11], which Motion was granted on December 30, 2020 [Docket Entry No. 12].

In her Complaint, Plaintiff on her own behalf, and purportedly on behalf of all others similarly situated[1], sets forth three separate causes of action as follows: (1) "First Claim for Relief: Breach of Contract"; (2) "Second Claim for Relief: Unjust Enrichment"; and (3) "Third Claim for Relief: Conversion & Taking of Property."

While specific allegations will be addressed as relevant throughout this memorandum of law, briefly, Plaintiff's Complaint and allegations therein flow from Defendant's shift to online learning on or about March 14, 2020 in response to the COVID-19 pandemic (Pl.'s Compl., "Nature of the Action", ¶¶3-4) and her claims for damages flowing therefrom.

## II.   LAW AND ARGUMENT

### A. Standard of Review

A motion to dismiss pursuant to FRCP 12(b)(6) for failure to state a claim is designed "merely to assess the legal feasibility of a complaint, not to assay the weight of evidence which might be offered in support thereof." Ryder Energy Distrib. Corp. v. Merrill Lynch Commodities, 748 F.2d 774, 779 (2d Cir. 1984), quoting, Geisler v. Petrocelli, 616 F.2d 636, 639 (2d Cir. 1980). In order to survive a motion to dismiss

---

[1] Plaintiff's proposed class has not yet been certified by this Court and Movant herein does not waive any objections, arguments, motions, or defenses it may have as to certification of the class proposed in Plaintiff's Complaint and Movant expressly reserves all such objections, arguments, defenses, and motions.

under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Sarmiento v. U.S., 678 F.3d 147, 152 (2d Cir. 2012), quoting, Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009).  Further, "[a] pleading that offers 'labels and conclusions' or 'formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" (Internal citation and quotation omitted.) Iqbal, 556 U.S. at 678.  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'" Id., quoting, Bell Atl. Corp. v. Twombly, 550 U.S. 544, 557, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." (Internal citations omitted.) Id.

In the context of a motion to dismiss for failure to state a claim, the Court follows a "two-pronged approach" in evaluating the sufficiency of the complaint. Hayden v. Paterson, 594 F.3d 150, 161 (2d Cir. 2010).  First, "[a] court 'can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth'" Id.  "At the second step, a court should determine whether the 'well-pleaded factual allegations,' assumed to be true, 'plausibly give rise to an entitlement to relief'" Id., quoting, Iqbal, 556 U.S. at 679.  "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678.

### B. Plaintiff's first claim, identified as a state law claim of breach of contract, fails to state a claim upon which relief can be granted and, therefore, must be dismissed.

Plaintiff's first claim, sounding in breach of contract under Connecticut state law[2], alleges, *inter alia*, that the Defendant breached an alleged contract[3] with Plaintiff in failing, during COVID-19 driven closures, to provide "in-person and on-campus live education". (Pl.'s Compl., First Claim, ¶46).

Materially, Plaintiff alleges as follows, in her Complaint, as subsequently incorporated by reference into her First Claim sounding in Breach of Contract:

> 6. In short, Plaintiff and the members of the Class have paid for tuition for a first-rate education and an on-campus, in-person education experiences, including with all the benefits offered by a first-rate university. Instead, students like Plaintiffs were provided a materially deficient and insufficient alternative, which constitutes a breach of the contracts entered into by Plaintiffs with the University.
> …
> 17. Plaintiff and the members of the Class paid tuition for the benefit of on-campus live interactive instruction and an on-campus educational experience throughout the semesters.
> 18. Throughout March 2020, the University made public announcements adjusting educational services and opportunities that affected Plaintiffs.
> 19. The University has not held any in-person classes since March 14, 2020 for undergraduate students. All classes since March 14, 2020 have only been offered in a remote online format with no in-person instruction or interaction.
> …

---

[2] Recognizing that these claims were instituted in Connecticut state court and then removed to this Court pursuant to diversity of jurisdiction under 28 U.S.C. §§ 1332, 1441, and 1446, as previously noted herein, Plaintiff's claims are evaluated, for purposes of legal sufficiency, under the standards applicable to her claims as a matter of Connecticut substantive law.

[3] Defendant does not, at this juncture, concede or admit the existence of a valid and/or binding contract, whether written or verbal, as alleged by Plaintiff. As the present motion practice is directed to issues of theoretical legal viability of Plaintiff's claims, the truth and accuracy of Plaintiff's allegations regarding the existence of a contract are presumed true, although this Defendant specifically and expressly reserves the right to refute and/or deny these allegations in subsequent pleadings and/or motion practice and this motion practice shall not be deemed an admission thereof.

22. Students attending Bridgeport's Spring 2020, Summer 2020 and Fall 2020 semesters did not choose to attend an online-only institution of higher learning, but instead chose to enroll in the University's in-person educational programs – with the understanding that Bridgeport would provide in person educational opportunities, services, and experiences.

23. On its website, Bridgeport markets its University's on-campus experience and opportunities as a benefit to students.

24. The online learning options being offered to Bridgeport's students are sub-par in several significant aspect [sic] as compared to what the educational experience afforded Plaintiff and the members of the Class once was. During the online portion of the Spring and Summer 2020 semesters, Bridgeport used programs by which previously recorded lectures were posted online for students to view on their own or by virtual Zoom meetings.  Therefore, there was a lack of classroom interaction among teachers and students, and among students that is instrumental in educational development and instruction.

25. The online formats being used by Bridgeport do not require memorization or the development of strong study skills given the absence of any possibility of being called on in class and the ability to consult books and other materials when taking exams.  Further, the ability to receive a Pass-Fail grade rather than a letter grade provides educational leniency that the students would not otherwise have with the in-person letter grading education that was paid for and expected.

26. Students, like Plaintiff, have been deprived of the opportunity for collaborative learning and in-person dialogue, feedback, and critique.

27. Access to facilities such as libraries, laboratories, computer labs, recitations, and study rooms, are integral to a college education.

28. Access to activities offered by campus life fosters intellectual and academic development and independence, and networking for future careers.

Setting aside, for the moment, the very relevant historical context of the onset (and present continuation) of an unprecedented global pandemic, and further setting aside the practical impossibility of the continuation of in-person education given

statewide closures and prohibitions of in-person gatherings over the course of numerous Executive Orders issued by Governor Lamont, Plaintiff's claim, on behalf of herself and the proffered class members is not that they were wholesale deprived of the education for which they paid tuition, but rather than Plaintiff deemed the online instruction received to be substandard to the education that she anticipated.

Plaintiff, on behalf of herself and the proffered class, fails to set forth a cause of action recognized under Connecticut law: "Where the essence of the complaint is that [an educational institution] breached its agreement by failing to provide an effective education, the court is . . . asked to evaluate the course of instruction [and] called upon to review the soundness of the method of teaching that has been adopted by [that] education institution." Gupta v. New Britain General Hospital, 239 Conn. 574, 687 A.2d 111 (1996), quoting, Ross v. Creighton University, 957 F.2d 410, 416 (7th Cir. 1992).

Plaintiff's claim "raise[s] questions concerning the reasonableness of conduct by educational institutions in providing particular educational services to students – questions that must be answered by reference to principles of duty, standards of care, and reasonable conduct associated with the law of torts." Gupta, 239 Conn. at 591, quoting, CenCor, Inc. v. Tolman, 868 P.2d 396, 399 (Colo.1994) (en banc).  As the Gupta court went on to note, such tort principles "are difficult, if not impossible, to apply in the academic environment" such that "courts have almost universally held that claims of 'educational malpractice' are not cognizable." Id. "Among other problems for adjudication, these claims involve the judiciary in the awkward tasks of defining what constitutes a reasonable educational program and of deciding whether that standard has been breached." Id., citing, Peter W. v. San Francisco Unified School District, 60

Cal.App.3d 814, 825, 131 Cal.Rptr. 854 (1976).  Further, "[i]n entertaining such claims . . . courts are required 'not merely to make judgments as to the validity of broad educational policies . . . but, more importantly, to sit in review of the day-to-day implementation of these policies.'" Id., quoting, Donohue v. Copiague Union Free School District, 47 N.Y.2d 440, 445, 418 N.Y.S.2d 375, 391 N.E.2d 1352 (1979).

These same considerations have further prevented the legal recognition of causes of action sounding in breach of contract relating to educational services and issues. Id. "It is as a result of these considerations that contract claims challenging the overall quality of educational programs 'have generally been rejected.'" Id. at 591-92, quoting, CenCor, Inc. v. Tolman, 868 P.2d 396, 398 (Colo.1994).

The Gupta court identified only two sets of circumstances under which courts "will entertain a cause of action for institutional breach of a contract for educational services." Id. at 592.  The first in which "the educational program failed in some fundamental respect, as by not offering any of the courses necessary to obtain certification in a particular field." Id., citing, Wickstrom v. North Idaho College, 111 Idaho 450, 452, 752 P.2d 155 (1986); Ross v. Creighton University, 957 F.2d 410, 417 (7th Cir. 1992).  The second in which "the educational institution failed to fulfill a specific contractual promise distinct from any overall obligation to offer a reasonable program." Gupta, 239 Conn. at 593.

The Gupta court's holding precluding the pursuit of educational negligence claims cast as breach of contract claims has been uniformly upheld since that decision by the Supreme Court of Connecticut.  In Faigel v. Fairfield University, the Appellate Court of Connecticut affirmed summary judgment awarded in favor of the defendant

8

university with respect to plaintiff's breach of contract claim, stating, *inter alia*: "We have searched Connecticut case law to ascertain whether cases decided since Gupta have moved away from the requirement that a claim of breach of contract by an educational institution must be based on the breach of a 'specific contractual promise.' We have found none." 75 Conn. App. 37, 42, 815 A.2d 140 (2003).  Similarly, in Little v. Yale University, the Appellate Court of Connecticut upheld an award of summary judgment to the defendant university premised upon the Gupta court decision in the absence of any evidence of a specific contractual promise. 92 Conn. App. 232, 236-237, 884 A.2d 427 (2005).

Connecticut state trial courts have similarly applied the Gupta decision in the context of breach of educational contract claims.  In Brodsky v. Mead School for Human Development, the court granted defendant's motion to strike where "[t]he promises alleged . . . are vague, and therefore, are not specific measurable obligations distinguishable from an overall obligation to provide a reasonable program." Superior Court, Docket No. DNX05CV970156788S, 1999 WL 391580, at *6-7 (June 4, 1999, Tierney, J.).[4]  In Lotto v. Hamden Board of Education, the court likewise granted a motion to strike a claim for breach of contract in the context of an educational claim in the absence of any specific contractual promise. Superior Court, Judicial District of New Haven, Docket No. CV054010436, 2006 WL 618361, at *4-5, 40 Conn. L. Rptr. 713 (Feb. 21, 2006, Silbert, J.).

In the context of the present case, no allegations are levied by Plaintiff to remove this breach of contract claim from those precluded by the Gupta court.  Plaintiff alleges

---

[4] A true and accurate copy of this decision is annexed hereto at Exhibit 1.

no making, or nonperformance for that matter, of a special promise, beyond the normal educational expectations, as between herself and the Movant. See, Faigel v. Fairfield University, 75 Conn. App. at 38 ("To limit judicial intrusion into education decision making, the student must, however, allege nonperformance of a special promise, a promise outside the purview of normal educational expectations.").

The thrust of Plaintiff's claims, as previously summarized herein, is that the transition from in-person to online educational platforms in the midst of COVID-19 closures resulted in a "sub-par" educational experience. (Pl.'s Compl., First Claim, ¶24.) Plaintiff levies no allegations that she was wholesale deprived of an education notwithstanding the payment of tuition; she does not allege that her education, as undertaken remotely during COVID-19 closures and modifications, deprived of her courses or some other fundamental requirement(s) for certification in a particular field and/or obtaining her degree; and she fails to point to any specific contractual promise *distinct* from the provision of an "overall obligation to offer a reasonable program" (Gupta, 239 Conn. at 593.) that might otherwise remove her claims from those historically precluded when cast as claims of breach of contract in the context of education.

Therefore, and premised upon the long-standing prohibition under Connecticut law of educational negligence claims re-cast as breach of contract claims as set forth herein above, Plaintiff's first claim fails to state a claim upon which relief can be granted and, therefore, must be dismissed.

### C. Plaintiff's second claim, identified as a state law claim of unjust enrichment, fails to state a claim upon which relief can be granted and, therefore, must be dismissed.

Plaintiff's second claim, sounding in unjust enrichment under Connecticut state law, alleges, *inter alia*, that the Defendant was unjustly enriched during COVID-19 driven closures, in that Defendant "failed to provide reimbursements[5] for tuition and fees despite the diminished value of the education and other experiences that it provided and the reduced benefits associated with the fees." (Pl.'s Compl., Second Claim, ¶64).

At the heart of Plaintiff's claim of unjust enrichment is her assertion that she received an education and related experiences of "diminished value". Id.

This claim does not fit the traditional legal paradigm of unjust enrichment, nor is it viable under the Supreme Court of Connecticut's decision in Gupta, 239 Conn. 574 (1999).

As set forth by the Supreme Court of Connecticut in Hartford Whalers Hockey Club v. Uniroyal Goodrich Tire Co.:

> Unjust enrichment applies wherever justice requires compensation to be given for property or services rendered under a contract, and no remedy is available by an action on the contract. 5 S. Williston, Contracts (Rev.Ed.) § 1479. A right of recovery under the doctrine of unjust enrichment is essentially equitable, its basis being that in a given situation it is contrary to equity and good conscience for one to retain a benefit which has come to him at the expense of another . . . With no other test than what, under a given set of circumstances, is just or unjust, equitable or inequitable, conscionable or unconscionable, it becomes necessary in any case where the benefit of the doctrine is claimed, to examine the circumstances and the conduct of the parties and apply this standard . . . Unjust enrichment is consistent with the principles of equity, a broad and flexible remedy . . .

---

[5] To the extent that this claim is intertwined with Plaintiff's third claim, sounding in conversation, same shall be addressed separately in this memorandum.

> Plaintiffs seeking recovery for unjust enrichment must prove (1) that the defendants were benefited, (2) that the defendant unjustly did not pay the plaintiffs for the benefits, and (3) that the failure of payment was to the plaintiffs' detriment.

(Citations omitted; internal quotation marks omitted.) 231 Conn. 276, 282-83, 649 A.2d 518 (1994).

In her second claim, Plaintiff alleges, essentially, that the Defendant received the benefit of payment of Plaintiff's tuition, but, having received payment of the tuition, did not provide the allegedly promised educations services, to the detriment of the Plaintiff.

Under the circumstances of this particular action, this determination calls for the same type of judicial determination precluded by the Supreme Court of Connecticut in Gupta, 239 Conn. 574 (1999). The Gupta court, in rejecting both claims of educational malpractice and claims of breach of contract rooted in theories of educational malpractice, "rejected a cause of action based upon claims that focus on the reasonableness of conduct by schools in providing educational services to students." Brodsky, 1999 WL 391580, at *11, citing, Gupta, 239 Conn. at 590.

In order to determine whether the Defendant was theoretically unjustly enriched, as alleged by Plaintiff, this Court would necessarily have to examine and evaluate the "quality and value of services provided in return". Brodsky, 1999 WL 391580, at *11. This exact type of inquiry by this Court is precluded by the Gupta court, whether such claims are levied as educational malpractice, breach of contract, or, as here, as a claim for unjust enrichment.

12

6984007

Therefore, and for the same reasons that Plaintiff's first claim, alleging breach of contract, must be dismissed for failure to state a claim upon which relief can be granted, so too, must her claim for unjust enrichment.

> **D. Plaintiff's third claim, identified as a state law claim of conversion and taking of property, fails to state a claim upon which relief can be granted and, therefore, must be dismissed.**

Plaintiff's third claim, sounds in conversion, premised upon Defendant's alleged failure to provide a *pro rata* reimbursement of Plaintiff's tuition and fees following the Defendant's transition to online learning on or about March 14, 2020 in response to the COVID-19 pandemic (Pl.'s Compl., "Nature of the Action", ¶¶3-4). Materially, Plaintiff alleges as follows, in her Complaint, as subsequently incorporated by reference into her Third Claim sounding in Conversion:

> 11. Plaintiff Toro paid tuition and fees for in-person educational services, experiences, opportunities, and other related collegiate services.
> 12. Plaintiff Toro has not been provided a pro-rated refund of the tuition for her in-person classes that were discontinued and moved online, or the Mandatory Fees she paid after the University's facilities were closed and events were cancelled.
> …
> 21. Bridgeport has not provided reimbursement or refund information regarding tuition or the Mandatory fees.
> …
> 29. Bridgeport priced the tuition and Mandatory Fees based on the in person educational services, opportunities and experiences it was providing on campus.
> 30. The University has not made any refund of any portion of the tuition Plaintiff and the members of the Class paid for the semesters affected by Covid-19.
> 31. The University refunded [sic] any portion of the Mandatory Fees it collected from Plaintiff and the members of the Class for the affected semester even though it closed or ceased operating the services and facilities for which the Mandatory Fees were intended to pay.

13

> 32. Plaintiff and the Class members are therefore entitled to a pro-rated refund of the tuition and Mandatory Fee they paid for the Spring 2020 semester for the remaining days of that semester after classes moved from in-person to online and facilities were closed – or any other semesters affected by COVID-19.
>
> 33. Defendant's practice of failing to provide reimbursement for tuition and Mandatory Fees despite the diminished value of the education and other experiences that it provided, and the reduced benefits associated with the fees, as alleged herein, violates generally accepted principles of business conduct.

Notably absent from Plaintiff's allegations, however, is any allegation (1) that the University's acceptance of Plaintiff's tuition payment(s) was somehow wrongful at inception, or (2) that Plaintiff, and/or any other purported class member for that matter, ever actually demanded reimbursement (pro rata or otherwise) prior to filing this lawsuit.

Conversion claims under Connecticut law fall into two categories: "(1) those where the possession is originally wrongful; and (2) those where it is rightful and subsequently becomes wrongful.  Under the first class, wrongful use and the unauthorized dominion constitute the conversion; therefore no demand for the return of the personal property is required.  Under the second class, since the possession is rightful and there is no act of conversion, there can be no conversion until the possessor refuses to deliver up the property upon demand." Label Systems Corp. v. Aghamohammadi, 270 Conn. 291, 331 n.30, 852 A.2d 703 (2004).  See, also, Moore v. Waterbury Tool Co., 124 Conn. 201, 211, 199 A. 97 (1938) (Where ". . . possession is rightful, and there is no act of conversion, there can be no conversion until the possessor refused to deliver up the property upon demand.").

In the instant matter, Plaintiff has not alleged that her payment of tuition and acceptance of same by Defendant, in the first instance, was somehow wrongful. Further, Plaintiff has not alleged that she made a demand for a refund followed by a refusal of same on the part of the Defendant.  Rather, her claim of conversion is, by her own allegations, seemingly rooted in a theory that Defendant was under an affirmative obligation to simply refund her tuition or some portion thereof (notwithstanding the continuation of classes, albeit remotely, as alleged by Plaintiff) in the absence of a demand.  This does not, as a matter of law, establish her *prima facie* claim of conversion.

Therefore, and because Plaintiff's allegations fail to set forth a legally sufficient and/or cognizable claim of conversion under Connecticut law as set forth herein above, Plaintiff's third claim fails to state a claim upon which relief can be granted and, therefore, must be dismissed.

### III. CONCLUSION

WHEREFORE, based upon the foregoing, the Movant herein respectfully moves this Court to dismiss Plaintiff's Complaint, in its entirety, under Rule 12(b)(6) as set forth herein.

THE DEFENDANT
UNIVERSITY OF BRIDGEPORT

By: _____

Megan Bryson, Esq.
Federal Bar No. ct27955
Kaufman Borgeest & Ryan LLP
1010 Washington Blvd., FL 7
Stamford, CT 06901
Telephone: 203.557.5700
Facsimile: 203.557.5777
Email: mbryson@kbrlaw.com
*Attorneys for Defendant*

6984007

## CERTIFICATE OF SERVICE

This is to certify that on January 11, 2021, the foregoing document was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

Alina Habba, Esq.
1430 US Highway 206
Suite 240
Bedminster, NJ 07921
ahabba@habbalaw.com

Local Counsel:
Crystal L. Cooke, Esq.
crystal@cooke.law

By: _____
Megan E. Bryson, Esq.