## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| ABIGAIL TORO, on behalf of herself and all others similarly situated,<br><br>        PLAINTIFFS,<br><br>- AGAINST -<br><br>UNIVERSITY OF BRIDGEPORT,<br><br>        DEFENDANT. | Case No. 3:20-cv-01701 (SRU)<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT**<br><br><br>**JURY TRIAL DEMANDED** |

Plaintiff Abigail Toro ("Plaintiff"), by and through the undersigned counsel, brings this class action against Defendant University of Bridgeport ("Bridgeport," the "University," or "Defendant"), and alleges as follows based upon information and belief, except as to the allegations specifically pertaining to her, which are based on personal knowledge.

### NATURE OF THE ACTION

1.  This is a class action lawsuit on behalf of all persons who paid tuition and/or fees to attend the University of Bridgeport for an in person, hands-on educational services and experiences for the semesters or terms affected by Coronavirus Disease 2019 ("COVID-19"), including the Spring 2020 and Summer 2020 semesters, and had their course work moved to online only learning.

2.  Students, like Plaintiff, were required to pay all or part of the Spring 2020 semester tuition to attend Bridgeport University, including an average tuition that was around $16,430 per semester for undergraduate students, and mandatory fees for each semester of approximately

1

$1,695 including a "general fee", a student government fee, and other fees associated with specific classes and services ("Mandatory Fees").

3.    Bridgeport has not refunded any amount of the tuition or any of the Mandatory Fees, even though it has implemented online only distance learning starting in or around March 14, 2020.

4.    Because of the University's response to the COVID-19 pandemic, on or about March 14, 2020, the University also stopped providing any of the services or facilities the Mandatory Fees were intended to cover.

5.    According to a public release on March 11, 2020 Defendant announced "Effective immediately and until at least Friday, March 27, 2020: students may not return to campus following the conclusion of Spring Break. All students who reside in the residence halls must leave…Beginning on Saturday, March 14, 2020, all in-person classes at the Bridgeport and Waterbury campuses will be moved online or provided through other means of instruction."[1] In a follow up release on March 17, 2020 Defendant announced "Therefore, effective immediately, all UB courses will be held online for the remainder of the semester."[2]

6.    The University's failure to provide the services for which tuition and the Mandatory Fees were intended to cover since approximately March 14, 2020 is a breach of the contracts between the University and Plaintiff and the members of the Class, and it is unjust.

7.    In short, Plaintiff and the members of the Class have paid for tuition for a first-rate education and an on-campus, in-person educational experiences, including with all the benefits offered by a first-rate university. Instead, students like Plaintiff were provided a materially different alternative, which constitutes a breach of the contracts entered into by Plaintiff with the

---

[1] https://www.bridgeport.edu/notifications/information/2020-07-23/important-updates-about-coronavirus
[2] https://www.bridgeport.edu/notifications/information/2020-07-23/important-message-president-trombley

University.  Upon information and belief, prior to its March 2020 announcement that it would cease in-person instruction and effectively close the campus for the rest of the Spring 2020 semester, Defendant permitted online education for only some of its courses, and typically charged far less in tuition.

8.      As to the Mandatory Fees, Plaintiff and the Class have been deprived of access to these facilities and services as a result of Defendant's response to Covid-19. This failure also constitutes a breach of the contracts entered into by Plaintiff with Defendant.

9.      Rather than offer partial refunds, credits, or discounts to students like Plaintiff and the Class and balance the financial difficulties associated with Covid-19, Defendant has instead elected to place the financial burden entirely upon its students by charging them full tuition and fees when the services Bridgeport provided were not the full educational opportunities, experiences, and services that Plaintiff and the Class agreed to.

10.     Plaintiff does not challenge Defendant's compliance with the Covid-19 orders that were in place in Connecticut. Rather, Plaintiff challenges Defendant's decision to retain monies paid by students like Plaintiff and refusal to offer any refunds, provide any discounts, or apply any credit to Plaintiff and Class members' accounts when Defendant failed to provide the in-person and on-campus services.

11.     Plaintiff and the putative Class contracted and paid for an education, not course credits. They paid for the robust education and full experience of academic life on Bridgeport's campus; remote online learning cannot provide the same value as in-person education.

12.     Plaintiff seeks, for herself and Class members, the University's disgorgement and return of the pro-rated portion of its tuition and Mandatory Fees, proportionate to the amount of time in the respective semesters when the University closed and switched to online only learning.

The return of such amounts would compensate Plaintiff and the Class members for damages sustained by way of Defendant's breach.

13.    Plaintiff seeks, for herself and the Class members, protections including injunctive and declaratory relief protecting Class Members for paying the full cost of tuition and fees during the pendency of the pandemic in light of the educational services, opportunities, and experiences Defendant can actually safely provide.

14.    Plaintiff and members of the Class are entitled to a pro-rated refund of tuition and Mandatory Fees for the duration of Defendant's Covid-19 related closures for the in-person education and on-campus services and opportunities that Plaintiff and members of the Class have been denied.

## PARTIES

15.    Plaintiff Abigail Toro was an undergraduate student during the Spring 2020 semester and is enrolled for classes in the Fall 2020 with an expected graduation date of June 2021. For the Spring 2020, Bridgeport charged Plaintiff approximately $15,960 in tuition and more than $1,700 in Mandatory Fees, including a design fee of $275, a student government fee of $100, a general fee of $1,320. Additionally, Named Plaintiff is expected to pay similar tuition and fees for the Fall 2020 semester.  Plaintiff Toro was also charged $7,975 as a residence hall charge.

16.    Plaintiff Toro is a resident of Baldwin, New York.

17.    Plaintiff Toro paid tuition and fees for in-person educational services, experiences, opportunities, and other related collegiate services. Plaintiff Toro has not been provided a pro-rated refund of the tuition for her in-person classes that were discontinued and moved online, or the Mandatory Fees she paid after the University's facilities were closed and events were cancelled.

4

18.    Defendant Bridgeport is a private university in Bridgeport, Connecticut that was founded in 1927. The University offers numerous major fields for undergraduate students, as well as a number of graduate programs.

19.    Defendant's undergraduate and graduate programs includes students from many, if not all, of the states in the country.  Its campus is located in Bridgeport, Connecticut. Defendant is a citizen of Connecticut.

## JURISDICTION AND VENUE

20.    Defendant contends that jurisdiction and venue are proper pursuant to 28. U.S.C. § 1332 enacted by the Class Action Fairness Act of 2005 (CAFA) and diversity of citizenship between the parties. See Doc. No. 1, ¶ 9 as filed via ECF.

## FACTUAL ALLEGATIONS.

21.    Plaintiff and Class Members paid to attend Bridgeport's Spring and Summer 2020 semesters including tuition and the Mandatory Fees. The Spring 2020 semester started on Jan. 10, 2020 and ended on May 8, 2020. The Summer 2020 terms started on May 13, 2020 and ended on or around Aug. 24, 2020.

22.    Tuition at the University was approximately $32,800 per year for undergraduate students, and $1,320.00 for a General Fee, $100.00 for a Student Government Fee, and other fee course/program fees, as well as similar charges for graduate students.

23.    Plaintiff and the members of the Class paid tuition for the benefit of on-campus live interactive instruction and an on-campus educational experience throughout the semesters.

24.    Plaintiff and Bridgeport entered into a contractual agreement where Plaintiff would provide payment in the form of tuition and fees and Defendant, in exchange, would provide in-person educational services, experiences, opportunities, and other related services.

25.     The terms of the contractual agreement were set forth in the documents and materials provided to Plaintiff from Bridgeport, including, but not limited to, Bridgeport's website, marketing materials, the application for admission submitted by Plaintiff and Class Members, the acceptance letters received by Plaintiff and Class Members, the registration materials, the course catalog, course listings, the registration materials, the bills/invoices, the student handbook, and other materials that were provided to the Plaintiff and the Class.

26.     Prior to Plaintiff's enrollment, Bridgeport highlighted in marketing materials, advertisements, and other documents that in-person educational opportunities, experiences, and services were invaluable to Plaintiff's educational experiences.

27.     Defendant offered these services to Plaintiff in exchange for payment of tuition and fees.

28.     Defendant offered these services to Plaintiff in exchange for payment of tuition and fees during various semesters during her enrollment, including the Spring 2020 semester.

29.     Plaintiff made payments to Defendant based on promises made by Bridgeport in those documents in lieu of receiving education at other universities or academic institutions – or enrolling in online-only universities.

30.     Defendant priced the cost of tuition based on the assumption of a full term of in-person learning.

31.     Upon information and belief, Defendant priced the Mandatory Fees based on the amount of services that students like Plaintiff would receive via in-person access.

32.     Throughout March 2020, the University made public announcements adjusting educational services and opportunities that affected Plaintiff.

33.     The University has not held any in-person classes since March 14, 2020 for

undergraduate students.  All classes since March 14, 2020 have only been offered in a remote online format with no in-person instruction or interaction.

34.    The services for which the Mandatory Fees were assessed were also terminated or cancelled at or about this time, such as access to University health and wellness facilities, programs or services; fitness facilities; student events or sports; and an in-person commencement.

35.    As a result of Defendant's response to the Coronavirus, Plaintiff and the Class were denied access to such facilities, services, and technology despite paying the Mandatory Fees.

36.    Students attending Bridgeport did not choose to attend an online only institution of higher learning, but instead chose to enroll in Bridgeport's in-person educational programs – with the understanding that Bridgeport would provide in-person educational opportunities, services, and experiences.

37.    On its website Bridgeport touts the on-campus experiences as valuable to its students "Living on campus is an important part of the overall experience and development of students at the university. Our residence halls are not just places for students to sleep, but are vibrant communities where students are ENGAGED as active members of the campus, EDUCATED on topics directly related to their success and EMPOWERED with the critical thinking skills that will help in their transformation into a responsible and active member of a global community."[3]

38.    Defendant marketed and conveyed the in-person experiences, including through sample materials like this:

---

[3] https://www.bridgeport.edu/student-affairs/residential-life



ubridgeport · Follow
University of Bridgeport

ubridgeport See some of our favorite photos from O, Bridgeport! Arts Festival 2019! An Annual Celebration of the Arts at the University of Bridgeport, October 16-18, 2019. Today is another exciting day. We look forward to seeing you at one of the many events taking place across campus! Learn more at bridgeport.edu/obridgeport. #OBridgeport.

232 likes

OCTOBER 17, 2019

Add a comment...                                    Post







39.      Defendant markets its campus environment, amenities, and location as valuable to the educational experience. "Our 56-acre campus on a gorgeous stretch of Long Island Sound in

Bridgeport, Conn., provides an ideal setting for scholarly pursuits. The campus is home to 14 schools, colleges and institutes, 7 residence halls, 4 dining facilities, a bookstore, snack shop, and a student center equipped with pool tables, a café and computer lab, student lounges, and clubs and activities spaces. All of the University's academic offerings are available through the main Bridgeport campus. This includes over 125 degree programs, minors, concentrations, and certificates."[4]

40.    However, that is not what students, including Plaintiff, received during the semesters affect by Covid-19.

41.    After Bridgeport converted to online-only learning, the options being offered to Bridgeport's students were materially different in practically every aspect as compared to what the educational experience afforded Plaintiff and the members of the Class once was.  During the online portion of the Spring and Summer 2020 semesters, Bridgeport used programs by which previously recorded lectures were posted online for students to view on their own or by virtual Zoom meetings. Therefore, there was a lack of classroom interaction among teachers and students, and among students that is instrumental in educational development and instruction.

42.    The online formats being used by Bridgeport do not require memorization or the development of strong study skills given the absence of any possibility of being called on in class and the ability to consult books and other materials when taking exams.

43.    Students, like Plaintiff, have been deprived of the opportunity for collaborative learning and in-person dialogue, feedback, and critique.

44.    Students, like Plaintiff, were denied access to facilities such as libraries, laboratories, computer labs, recitations, and study rooms, are integral to a college education.

---

[4] https://www.bridgeport.edu/about/campus-map-directions

45.    Students, like Plaintiff, were denied access to activities offered by campus life fosters intellectual and academic development and independence, and networking for future careers.

46.    Bridgeport priced the tuition and Mandatory Fees based on the in person educational services, opportunities and experiences it was providing on campus.

47.    Bridgeport has not made any refund of any portion of the tuition Plaintiff and the members of the Class paid for the semesters affected by Covid-19.

48.    The University refunded any portion of the Mandatory Fees it collected from Plaintiff and the members of the Class for the affected semester even though it closed or ceased operating the services and facilities for which the Mandatory Fees were intended to pay.

49.    Plaintiff and the Class members are therefore entitled to a pro-rated refund of the tuition and Mandatory Fee they paid for the Spring 2020 semester for the remaining days of that semester after classes moved from in-person to online and facilities were closed – or any other semesters affected by COVID-19.

50.    Defendant's practice of failing to provide reimbursements for tuition and Mandatory Fees despite the diminished value of the education and other experiences that it provided, and the reduced benefits associated with the fees, as alleged herein, violates generally accepted principles of business conduct.

## CLASS ACTION ALLEGATIONS

51.    Plaintiff brings this case individually and, pursuant to FRCP 23, on behalf of the class defined as:

> All persons who paid tuition and/or the Mandatory Fees for a student to attend in-person class(es) during the Spring 2020or any other semester affected by Covid-19 at the University of Bridgeport but had their educational experiences and class(es) moved to online only learning (the "Class").

11

52.     Plaintiff reserves the right to modify or amend the definition of the proposed Classes, if necessary, before this Court determines whether certification is appropriate.

53.     This action has been brought and may properly be maintained on behalf of the Class proposed herein under the criteria of FRCP 23 and other statutes and case law regarding class action litigation in Connecticut.

54.     The Class is so numerous that joinder of all members is impracticable.  Although the precise number of Class members is unknown to Plaintiff, the University has reported that an aggregate of 3,415 or more undergraduate and graduate students were enrolled for the 2018-2019 school year. The names and addresses of all such students are known to the University and can be identified through the University's records. Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, electronic mail, Internet postings, and/or published notice.

55.     The questions here are ones of common or general interest such that there is a well-defined community of interest among the class members. These questions predominate over questions that may affect only individual members of the classes because Bridgeport has acted on grounds generally applicable to the classes.  Such common legal or factual questions include, but are not limited to:

   a.  Whether the University accepted money from Plaintiff and the Class members in exchange for the promise to provide an in-person and on-campus live education, as well as certain facilities and services throughout the semesters affected by Covid-19;

   b.   Whether Defendant breached its contracts with Plaintiff and the members of the Class by failing to provide them with an in-person and on-campus live education after March 14, 2020;

   c.  Whether Defendant breached its contracts with Plaintiff and the Class by failing to

provide the services and facilities to which the Mandatory Fees pertained after mid-March 2020; and

    d.    Whether Defendant breached the covenant of good faith and fair dealing with Plaintiff and the members of the Class by failing to provide them with an in-person and on-campus live education after March 14, 2020;

    e.    Whether Defendant breached the covenant of good faith and fair dealing with Plaintiff and the members of the Class by failing to provide the services and facilities to which the Mandatory Fees pertained after mid-March 2020;

    f.    The amount of damages and other relief to be awarded to Plaintiff and the Class members.

56.    Plaintiff's claims are typical of the claims of the members of the Class because Plaintiff and the other Class members each contracted with Defendant for it to provide an in-person and on-campus live education for the tuition they paid and the services and facilities for the Mandatory Fee that they paid, that the University stopped providing in mid-March.

57.    Plaintiff is a more than adequate class representative.  In particular:

    a)    Plaintiff is committed to the vigorous prosecution of this action on behalf of herself and all others similarly situated and has retained competent counsel experienced in the prosecution of class actions and, in particular, class action litigation;

    b)    because her interests do not conflict with the interests of the other Class members who she seeks to represent

    c)    no difficulty is anticipated in the management of this litigation as a class action; and

    d)    Plaintiff's legal counsel has the financial and legal resources to meet the substantial costs and legal issues associated with this type of litigation.

58.    Class members' interests will be fairly and adequately protected by Plaintiff and her counsel.

59.    It is impracticable to bring members of the Classes individual claims before the Court. Class treatment permits a large number of similarly situated persons or entities to prosecute

their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, expense, or the possibility of inconsistent or contradictory judgments that numerous individual actions would engender. The benefits of the class mechanism, including providing injured persons or entities with a method for obtaining redress on claims that might not be practicable to pursue individually, substantially outweigh any difficulties that may arise in the management of this class action. A class action is superior to other available methods for the fair and efficient adjudication of this litigation. The damages or financial detriment suffered by individual Class members are relatively small compared to the burden and expense of individual litigation of their claims against the University. It would, thus, be virtually impossible for the Class, on an individual basis, to obtain effective redress for the wrongs committed against them. Furthermore, individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances.

60. Plaintiff also seeks class certification for injunctive and declaratory relief under FRCP 23(b)(2) and (b)(3), at the appropriate juncture.

<u>**FIRST CLAIM FOR RELIEF**</u>
**BREACH OF CONTRACT**
**(On Behalf of Plaintiff and the Class)**

61. Plaintiff repeats and re-alleges the factual allegations above, as if fully alleged herein.

62. Plaintiff brings this claim individually and on behalf of the members of the Class.

63.     Plaintiff and Class members entered into identical, binding contracts with Defendant by accepting Defendant's offer to register for on-campus classes in accordance with the terms of the Catalogs, Defendant's publications, and Defendant's usual and customary practice of providing on-campus courses.

64.     The language on Bridgeport's website, Catalogs, and in other materials made available to students promising in-person instruction, campus facilities, services, and resources became terms of the contract. That is, at the time of contract, the parties had the reasonable expectation that, in exchange for tuition and fee payments, Defendant would provide Plaintiff and Class members with an on-campus education. The nature of the instruction provided by Bridgeport at the time Plaintiff and Class members enrolled (i.e., in-person classroom instruction) as well as the facilities and resources offered by Bridgeport were and are material terms of the bargain and contractual relationship between students and Defendant.

65.     Under their contracts with Defendant, and per Defendant's usual and customary practice of providing on-campus courses, Plaintiff and Class members registered for on-campus courses and paid Defendant's tuition and/or fees for Defendant to provide in-person instruction and access to Defendant's facilities.

66.     For example, Plaintiff Toro registered for Interior Design 362 which was given the following course description by Defendant: "Documents Preparation of Construction Documents for Interiors will be covered in depth and applied to the Thesis project. Drawings to be prepared include construction/demolition, electric/telephone, reflected ceiling, floor finishes, applied finishes, panel and post, and furniture plans as well as detail drawing for special construction, custom cabinetry, furniture and millwork."[5]

---

[5] https://files.bridgeport.edu/public/Academics/Registrar/Catalog/6.Undergraduate-Instruction_2018-2020.pdf

67.     Bridgeport has held that its in-person educational opportunities, experiences, and services are of substantial value.

68.     Bridgeport has agreed to provide in-person educational opportunities, experiences, and services to enrolled students.

69.     Bridgeport has promoted its in-person educational services as being valuable to students' educational experiences and their develop.

70.     Defendant provided Plaintiff with an acceptance letter that Plaintiff accepted based on the promise of in-person educational experiences, opportunities, and services that Defendant would provide.

71.     Plaintiff and Class members have fulfilled all requirements of their mutually agreed contracts, having followed the Catalogs' policies, procedures, and requirements for registering and paying for on-campus courses and access to on-campus facilities and services. Plaintiff and Class members have paid Defendant for all financial assessments starting in the Spring 2020 semester.

72.     By ceasing in-person instruction, relegating Plaintiff and Class members exclusively to remote instruction and shutting down campus facilities and opportunities to Plaintiff and the Class, Defendant failed to provide the services for which Plaintiff and Class members bargained when they entered into their contractual relationship with Defendant.

73.     Defendant's failure to provide in-person instruction and shutdown of campus facilities amounts to a material breach of the contract.

74.     Plaintiff and the members of the putative Class have therefore been denied the benefit of their bargain.

75.     Plaintiff and members of the Class have suffered damages as a direct and proximate result of Defendant's breach, including being deprived of the education, experience, and services that they were promised and reasonably expected to obtain, and for which they have paid.

76.     Plaintiff and Class members are entitled to an award of money damages or partial restitution in an amount to be determined at trial as redress for Bridgeport's breach, including but not limited to prorated reimbursement of the tuition, Mandatory Fees, and other expenses for services that Defendant failed and continues to fail to deliver fully.

77.     Defendant's performance under the contracts is not excused because of COVID-19. Even if performance were excused or impossible, Defendant would nevertheless be required to return the funds received for services and/or goods that it did not provide.

**SECOND CLAIM FOR RELIEF**
**UNJUST ENRICHMENT**
**(On Behalf of Plaintiff and the Class)**

78.     Plaintiff repeats and re-alleges the factual allegations above, as if fully set forth herein.

79.     In the alternative, Plaintiff brings this claim for unjust enrichment individually and on behalf of the members of the Class.

80.     By paying the University tuition and the Mandatory Fees for the Spring, Summer semesters, the University agreed to, among other things, provide an in-person and on-campus live education as well as the services and facilities to which the Mandatory Fees they paid pertained throughout those affected semesters.

81.     Defendant has retained the benefits of the amount of tuition and fees that Plaintiff and the Class Members have provided – without providing the benefits that Plaintiff and the Class Members are owed.

82.    For example, Defendant failed to provide Plaintiff and Class Members access to any on-campus facility after March 11, 2020. Yet Defendant assessed Plaintiff with tuition and Mandatory Fees that covered the cost of upkeep and maintenance of such facilities, services, costs, and expenses.

83.    Plaintiff and the Class were not able to access such facilities or services remotely.

84.    Plaintiff and the Class paid tuition and fees with the expressed understanding that such costs included the in-person classes, services, opportunities, and experiences that Bridgeport have previously marketed, promoted, or made available prior to Covid-19.

85.    The costs incurred for having an online only program is significantly lower than the overhead needed to provide classes and services on campus.

86.    Defendant has been unjustly enriched by Plaintiff's and the Class' payment of tuition and fees.

87.    Despite not being able to provide such services, Bridgeport failed to provide reimbursements for tuition and fees despite the diminished value of the education and other experiences that it provided and the reduced benefits associated with the fees.

88.    Plaintiff and members of the putative Classes have sustained monetary damages as a result of each of Defendant's breaches of the covenant of good faith and fair dealing.


**THIRD CLAIM FOR RELIEF**
**CONVERSION & TAKING OF PROPERTY**
**(On Behalf of Plaintiff and the Class)**

89.    Plaintiff repeats and re-alleges the factual allegations above, as if fully set forth herein.

90.    Plaintiff brings this claim individually and on behalf of the members of the Class.

91.    Plaintiff and the Class have made financial arrangements that required Defendant to make payments before Defendant provided services.

92.    Defendant accepted Plaintiff's monies with the express understanding that the University would provide in-person educational experiences, opportunities, and services.

93.    Defendant was unable to perform such services or provide such experiences and opportunities.

94.    Defendant has converted Plaintiff's and the Class' property – namely their tuition and fees - into their own property[6] without just compensation.

95.    Defendant has converted Plaintiff's tuition and fees into its own monies without providing the in-person and on-campus services that Plaintiff and the Class gave their money for.

96.    Defendant's failure to return the tuition and fees paid by its students is a separate and distinct harm from its failure to provide the promised and agreed-upon in-person learning and on-campus services.

97.    It is inequitable for the University to convert such funds into its own profits despite the failure to provide such services, experiences, and opportunities.

---

[6] Indeed, colleges and universities must be able to separately account for student payments, as well as financial aid received on an individual student's behalf, as these institutions are frequently required to issue refunds to the government and the student for instances where the student enrolls but does not complete classes for which the institution has received financial aid payments from the federal government. The Higher Education Act ("HEA"), Title IV, governs federally funded student financial aid programs for college and post-secondary vocational training. *See* 20 U.S.C. §§ 1070–1099 (1990 & 1992 Supp.). The HEA requires that when a student withdraws partway through the enrollment period, the institution must refund a certain portion of the charges to account for its reduced educational obligations toward the student. *Career Coll. Ass'n v. Riley*, 74 F.3d 1265, 1269 (D.C. Cir. 1996). Thus, it is beyond dispute that any college or university receiving any tuition payments through government-provided financial aid must be able to account for what was paid for each individual student. This means that each student's tuition funds must be capable of being separately identified and sequestered, and a claim for conversion of those funds can be properly sustained. Moreover, discovery will flesh out more information about the particular accounting practices employed by Defendant.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that judgment be entered in favor of Plaintiff and the Class against Defendant as follows:

(a)    For an order certifying the Class under the FRCP and naming Plaintiff as representative of the Class and Plaintiff's attorneys as Class Counsel to represent the Class;

(b)    For an order finding in favor of Plaintiff and the Class on all counts asserted herein;

(c)    For compensatory damages in an amount to be determined by the trier of fact;

(d)    For an order compelling disgorgement of the ill-gotten gains derived by Defendant from its misconduct;

(e)    For an order of restitution and all other forms of equitable monetary relief;

(f)    For an order awarding Plaintiff's reasonable attorneys' fees, costs, and expenses;

(g)    For an order awarding pre- and post-judgment interest on any amounts awarded; and,

(h)    For an order awarding such other and further relief as may be just and proper, including injunctive relief and declaratory relief.

## DEMAND FOR TRIAL BY JURY

Plaintiff demands a trial by jury of any and all issues in this action so triable of right.

Dated: February 1, 2021

Respectfully submitted,

By: _____

Alina Habba, Esq.
**HABBA MADAIO & ASSOCIATES LLP**
1430 US Highway 206, Suite 240
Bedminster, NJ 07921
(908) 869-1188
(908) 869-1881 (facsimile)
ahabba@habbalaw.com
Juris No. 439257

Jeffrey K. Brown, Esq. *(To apply Pro Hac Vice)*
Michael A. Tompkins, Esq. *(To apply Pro Hac Vice)*
Brett R. Cohen, Esq. *(To apply Pro Hac Vice)*
**LEEDS BROWN LAW, P.C.**
One Old Country Road, Suite 347
Carle Place, NY 11514
(516) 873-9550
jbrown@leedsbrownlaw.com
mtompkins@leedsbrownlaw.com
bcohen@leedsbrownlaw.com

Jason P. Sultzer, Esq. *(To apply Pro Hac Vice)*
Jeremy Francis, Esq. *(To apply Pro Hac Vice)*
**THE SULTZER LAW GROUP, P.C.**
270 Madison Avenue, Suite 1800
New York, NY 10016
Telephone: (212) 969-7810
sultzerj@thesultzerlawgroup.com
francisj@thesultzerlawgroup.com

*Counsel for Plaintiff and Proposed Class*